**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**GREGORY ULYSSE,**

                                    **Petitioner,**

            **v.**

**STEVEN JOHNSON,** *et al.***,**

                                    **Respondents.**

**Civil Action No. 16-7845 (ES)**

**OPINION**

SALAS, DISTRICT JUDGE

Gregory Ulysse ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.E. No. 3 ("Petition" or "Pet.")).  For the reasons that follow, the Court denies the Petition and denies a certificate of appealability.

## I.      BACKGROUND

After a jury trial, Petitioner was convicted of two counts of first-degree murder, N.J. Stat. Ann. 2C:11-3(a)(1) & (2); one count of second-degree conspiracy to commit murder, N.J. Sat. Ann. 2C:5-2 & 2C:11-3; one count of second-degree possession of a handgun for an unlawful purpose, N.J. Stat. Ann. 2C:39-4(a); and one count of third-degree unlawful possession of a handgun, N.J. Stat. Ann. 2C:39-5(b).  *State v. Ulysse*, No. A-3579-08T4, 2011 WL 487851, at *1 (N.J. Super. Ct. App. Div. Feb. 14, 2011).  On the two murder convictions, Petitioner was sentenced to two 30-year terms of imprisonment, running consecutively and without parole

eligibility.[1]  *Id.* at *4.  On the conviction for unlawful possession of a handgun, Petitioner was sentenced to three years of imprisonment, running concurrently with the murder sentences.  *Id.*

The case arose from the shooting of Emmanuel Previllon and Edner Pierre on the evening of January 28, 2001, in Newark, New Jersey.[2]  *Id.* at *1–2.  On that day, Petitioner and his friends, Fanshiyu Florexil and Steve St. Fleur, attended a family barbeque on Boyden Avenue in Maplewood, New Jersey.  *Id.* at *1.  Petitioner and his friends had a confrontation with Previllon during which Florexil punched Previllon and pulled out a gun.  *Id.*  Petitioner took the gun and shot it into the air.  *Id.*  Previllon left the family barbeque and went to another house party at Kerrigan Boulevard in Newark.  *Id.*  While he was standing outside the party house, Previllon was approached by Petitioner in a car and was asked to "meet him down the corner."  *Id.*  Their encounter turned into a gunfight on the street.  *Id.* at *2.  Florexil was injured, and Previllon and his friend Pierre were killed by Petitioner and his friend St. Fleur.  *Ulysse*, 2011 WL 487851, at *1.

Petitioner and St. Fleur fled to Allentown, Pennsylvania, and remained fugitives until December 17, 2001.  *Id.* at *3.  They were eventually arrested by Allentown police officers, who recovered a 9mm handgun from a car owned by the friend with whom Petitioner was living and a .38 caliber revolver from the house where St. Fleur was staying.  *Id.*; *see also State v. Ulysse*, No. A-4425-10T2, 2013 WL 1858914, at *1 (N.J. Super. Ct. App. Div. May 6, 2013).  The 9mm handgun had been used to shoot Previllon, and the .38 caliber revolver was used to shoot Pierre.  *Id.*

---

[1]      Petitioner's convictions for conspiracy to commit murder and possession of a handgun for an unlawful purpose were merged into the first of the two murder convictions.  *State v. Ulysse*, Ind. Nos. 01-12-4806-I & 02-04-1363-I, at 2 (N.J. Super. Ct. Feb. 17, 2015) (hereinafter "*Ulysse*, Trial Ct. 2015"); (D.E. No. 19-2, Respondent Exhibit 30).

[2]      The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C.§ 2254(e)(1).

Two days later, on December 19, 2001, Newark Detective Vincent Vitiello, who was investigating the fatal shootings of Previllon and Pierre, traveled to Allentown and interviewed Petitioner. *State v. Ulysse*, 2013 WL 1858914, at *2. After *Miranda* warnings, Petitioner waived his *Miranda* rights and confessed to the crimes. *Ulysse*, 2011 WL 487851, at *3. Specifically, he admitted that he had a problem with Previllon concerning a girl and that he intended to shoot Previllon. *Id.* He also admitted that he carried the 9mm handgun in Maplewood and in Newark and told the police where to find the gun he had hidden. *Id.* Petitioner later moved to suppress his confession, arguing that he was high on drugs when the police interviewed him. *Ulysse*, 2013 WL 1858914, at *2. At his *Miranda* hearing, Petitioner also testified that he had not slept in two days and had not eaten anything that day. *Id.* He stated that the police officers did not honor his request for a lawyer and that he only found out that he was being investigated for a murder after he waived his *Miranda* rights. *Id.* The trial judge denied Petitioner's motion to suppress, concluding that Petitioner's testimony was not credible and that he had knowingly and voluntarily waived his rights and given the statement. *Id.* at *3.

After he was convicted and sentenced in 2003, Petitioner filed various appeals and petitions for post-conviction relief ("PCR"). Shortly after sentencing, Petitioner retained a lawyer to represent him on direct appeal. *Ulysse*, 2011 WL 487851, at *4. Unbeknownst to Petitioner until 2007, the lawyer failed to file an appeal on his behalf. *Id.* After further correspondence with the state court, Petitioner filed his first PCR petition, seeking, *inter alia*, resentencing, an evidentiary hearing, and reinstatement of his right to appeal *nunc pro tunc*. *Id.* at *4–5. The trial court denied the petition in its entirety. *Id.* at *5. The Appellate Division allowed Petitioner leave to appeal *nunc pro tunc* but held that no evidentiary hearing was needed regarding the counsel's failure to file a direct appeal. *Id.* at *6–7. Petitioner subsequently filed a direct appeal, which the Appellate

Division denied on May 6, 2013.  *Ulysse*, 2013 WL 1858914.  On December 4, 2013, Petitioner

filed his second PCR petition, which the trial court denied on February 27, 2014.  (D.E. No. 10-9

at 179–82).  Petitioner then filed his third and last PCR petition on November 19, 2014.  *State v.*

*Ulysse*, No. A-3291-14T1, 2015 WL 10401424, at *1 (N.J. Super. Ct. App. Div. Mar. 4, 2016).

That was denied on February 17, 2015, and the Appellate Division affirmed on March 4, 2016.  *Id.*

On July 15, 2016, the New Jersey Supreme Court denied Petitioner's petition for certification.

*State v. Ulysse*, 151 A.3d 974 (N.J. 2016).

Petitioner filed the instant Petition for habeas relief under § 2254 on December 22, 2016.

Respondents filed their opposition on April 13, 2017.  (D.E No. 10 ("Resp. Opp. Br.")).  Petitioner

filed a reply on June 8, 2017.  (D.E. No. 11).

## II.   STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody

"in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Petitioner has the burden of establishing each claim in the petition.  *See Eley v. Erickson*, 712 F.3d

837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

Death Penalty Act ("AEDPA"), federal courts in habeas corpus cases must give considerable

deference to determinations of state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766,

773 (2010).

Under AEDPA, a federal court has "no authority to issue the writ of habeas corpus unless

the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly

established Federal Law, as determined by the Supreme Court of the United States,' or 'was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding.'"  *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).  Clearly

established law for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Finally, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. 2254(b)(1)(A). To do so, "a petitioner must 'fairly present' all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quoting *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

## III.    ANALYSIS

Petitioner raises a myriad of repetitive claims for relief but ultimately asserts four grounds for relief. Specifically, he alleges that he was denied the rights protected under the Sixth Amendment (Ground One), the Fifth Amendment (Ground Two), the Due Process Clause (Ground Three), and the Fourteenth Amendment (Ground Four). (Pet. at 6–10). For ease of reference, the Court categorizes and analyzes Petitioner's apparent claims for relief as follows: First, Petitioner asserts ineffective assistance of his trial counsel based on her failure to 1) investigate his case; 2) object to the prosecutor's cross-examination and summation remarks; 3) object to the consecutive

sentence imposed; 4) "exercise a peremptory challenge to excuse a juror who worked in law enforcement;" 5) request an accomplice liability jury instruction; and 6) object to the trial court's "overemphasizing the charges on conspiracy to commit murder and conspiracy as a basis for substantive liability on Defendant's guilt." (*Id.*).  Next, Petitioner asserts that his appellate counsel was ineffective for failing to file a direct appeal and to raise any of the above deficiencies committed by trial counsel on appeal.  (*Id.*).  Finally, Petitioner argues that the trial court violated his Constitutional rights by essentially allowing his trial counsel to provide ineffective assistance. (*Id.*).  He also argues that the trial court erred in 1) admitting his confession, and 2) limiting his trial counsel's opportunity to cross-examine a witness.  (*Id.*).

While the numerous claims that are currently before the Court were raised at some point before the state court, the Court notes that the majority of Petitioner's claims were dismissed by the state courts as time-barred.  The Court will first address the claims that were properly raised before the state court, then discuss the untimely claims.

### A.      The First PCR Petition

In Petitioner's first PCR petition, he argued that his appellate counsel failed to file a direct appeal, and, as support that an evidentiary hearing was required to evaluate his PCR claims, alleged that his trial counsel failed to conduct an adequate investigation on his case.  *Ulysse*, 2011 WL 487851, at *5–7.  The Appellate Division affirmed the trial court's decision not to hold an evidentiary hearing and held that Petitioner's assertion that the trial counsel inadequately investigated his case was "purely conclusory and does not meet the requirements of *Cummings*." *Id.* at 6 (citing *State v. Cummings*, 728 A.2d 307 (N.J. App. Div. 1999)).  Nevertheless, the court treated Petitioner's PCR petition as a motion for leave to appeal *nunc pro tunc* and allowed Petitioner to file a direct appeal out of time.  *Id.*

Petitioner now argues that his appellate counsel's failure to file a direct appeal constitutes ineffective assistance of counsel. (*See* Pet. at 6).  Respondent argues that Petitioner was already granted relief when he raised this claim in state court.  (Resp. Opp. Br. at 24).  The Court agrees. The Appellate Division remanded Petitioner's case to allow Petitioner an opportunity to file a direct appeal.  *See Ulysse*, 2011 WL 487851, at *7–8.  Despite the regrettable delay, he was eventually able to bring his direct appeal.

Petitioner also argues that his trial counsel was ineffective for failing to investigate.  (Pet. at 6).  As a preliminary matter, a federal court has "no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Parker*, 567 U.S. at 40 (quoting 28 U.S.C. § 2254(d)).  Petitioner fails to point to any "clearly established Federal Law, as determined by the Supreme Court of the United States," which the state court ignored or applied unreasonably.  28 U.S.C. § 2254(d).  Petitioner's habeas claims as to his counsel's alleged failure to investigate are dismissed for this reason.  *See id.*

In addition, as he did in state court, Petitioner only provides a conclusory allegation that counsel failed to prepare for trial, conduct an adequate investigation, and call witnesses.  (*Compare* Pet. at 6–10, *with Ulysse*, 2011 WL 487851, at *6).  Petitioner does not provide any facts indicating the identity of the potential witnesses or what their testimony would have entailed.  Nor does he provide any affidavits or other evidence to support his argument.  Similarly, Petitioner fails to point to any specific deficiencies in his counsel's investigation or trial preparation.  The Court is thus unable to determine, as it must for an ineffective assistance of counsel claim, whether

Petitioner was prejudiced by his counsel's allegedly deficient representation.  *See Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014) ("[A petitioner's] failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a prima facie showing of prejudice.")); *see also Strickland v. Washington*, 466 U.S. 668, 687–90 (1984).  Because Petitioner fails to allege that the state court's analysis of trial counsel's representation was contrary to, or an unreasonable application of, clearly established federal law, habeas relief is denied on this claim.

### B.  Direct Appeal

Petitioner argued on direct appeal that 1) his confession should have been suppressed because he was not on notice of his arrest warrant and criminal complaint until after he had waived his *Miranda* rights, and because he was sleep deprived, under the influence of drugs, and had not eaten that day; 2) the trial prosecutor committed prosecutorial misconduct by referencing Petitioner as a liar during cross-examination and summation; and 3) Petitioner's two 30-year sentences should have run concurrently.  *Ulysse*, 2013 WL 1858914, at *1.  The Appellate Division rejected all three arguments.

The state appellate court conducted a detailed review of the record of the *Miranda* hearing and affirmed the trial court's holding that Petitioner knowingly and voluntarily waived his rights and gave the statement.  *Ulysse*, 2013 WL 1858914, at *3.  The Appellate Division deferred to the trial court's factual finding and credibility determination, noting that the trial court found that Petitioner's statement to the police was "extremely detailed, demonstrating a 'vivid recollection' of the crime," and that Petitioner reviewed his typed statement and made corrections before signing it.  *Id.* at *3–4.  The court also found that, by raising it for the first time on appeal, Petitioner waived the argument that he was not told about his arrest warrant before his *Miranda* waiver.  *Id.*

*at* *4.  The Appellate Division nevertheless considered the merits and held that the record established that Petitioner was told about his warrant before he was questioned and that the police officer administered *Miranda* warnings a second time before taking Petitioner's written statement. *Id.*

In considering a *Miranda* suppression decision during habeas review, federal courts have "an independent obligation to determine whether a confession was voluntary."  *Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010) (quoting *Miller v. Fenton*, 474 U.S. 104, 112 (1985)).  In undertaking that independent obligation, the federal court is not bound by the state courts' ultimate decision as to the voluntariness of a waiver of the petitioner's rights, but must defer to state court's fact finding as to "subsidiary factual questions" including findings regarding the credibility of the witnesses who testified at the suppression hearing.  *Id.*; *see also Miller*, 474 U.S. at 110-12.  Ultimately, if the district court concludes that the state court was correct in determining that, under the totality of the circumstances, "the confession was obtained in a manner compatible with the requirements of the Constitution," no habeas relief is warranted.  *Sweet*, 386 F. App'x at 345; *Miller*, 474 U.S. at 112.

Considering the facts as determined by the state courts, the Court is satisfied that Petitioner knowingly and voluntarily waived his *Miranda* rights.  The trial court judge made a credibility finding in favor of the testifying detectives over Petitioner and ruled that Petitioner knowingly, intelligently, and voluntarily waived his *Miranda* rights.  *Ulysse*, 2013 WL 1858914, at *3.  The detective's testimony undermined Petitioner's arguments that he was not lucid and that he was not aware that there was a criminal complaint against him.  *Id.*  Petitioner has not demonstrated how, under the totality of the circumstances, his confession was obtained in contravention of his constitutional rights.  Consequently, the state courts' decision was not an unreasonable application

of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).

Next, the Appellate Division held that Petitioner's argument regarding the alleged prosecutorial misconduct is barred by the doctrine of invited error.  *Ulysse*, 2013 WL 1858914, at *4–5.  Alternatively, the court held that, even considering the argument, the prosecutor's conduct did not deprive Petitioner of a fair trial.  *Id.* at 5.  The court found that, at the time Petitioner was arrested, he confessed to the police that he shot Previllon and that St. Fleur shot Pierre.  *Id.* at *4.  However, in an affidavit he signed a few months later, Petitioner stated that he was responsible for both shootings and that he lied when he accused St. Fleur of shooting Pierre.  *Id.*  At trial, Petitioner then reverted to the initial version and testified that the affidavit was a "lie," which prompted the prosecutor to question Petitioner about which of his statements were lies.  *Id.*  The Appellate Division thus held that the prosecutor's question to Petitioner and remarks in summation regarding Petitioner's "lies" were prompted by Petitioner's own conduct.  *Id.* at *5.

The Court agrees with the Appellate Division that Petitioner's own statements invited the prosecutor's questions.  Thus, to the extent that Petitioner's habeas claim based on prosecutorial misconduct has merit, that claim is subject to rejection under the invited error doctrine.  *See Saunders v. D'Illio*, No. 15-2683, 2018 WL 1251629, at *8–9 (D.N.J. Mar. 12, 2018) ("The doctrine of invited error prevents a habeas petitioner from raising a claim challenging an action of the trial court which was invited or induced by that petitioner or by that petitioner's attorney."), *aff'd* 803 F. App'x 609 (3d Cir.), *cert. denied*, 140 S. Ct. 2753 (2020); *see also York v. O'Llio*, No. 13-7609, 2016 WL 5938700, at *10 (D.N.J. Oct. 11, 2016).  More fundamentally, a criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair.  *See Darden v. Waingright*, 477 U.S. 168, 182–83 (1986).  A district court

may grant a habeas petition only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks omitted). Nothing in the record suggests that is the case here. It is not even clear that, in the context of the entire trial, Petitioner was unfairly prejudiced by the prosecutor's comments when Petitioner himself testified that his earlier affidavit included a "lie." *Ulysse*, 2013 WL 1858914, at *4; *see Werts v. Vaughn*, 228 F.3d 178, 198 (3d Cir. 2000) (" In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, we are required to examine those remarks in the context of the whole trial."). Thus, even if Petitioner's claim were not barred by the invited error doctrine, and to the extent that the prosecutor's comments were erroneous, the Court perceives no deprivation of Petitioner's due process rights in the context of the whole trial. *See York*, 2016 WL 5938700, at *10 (denying petitioner's habeas petition based on alleged error committed during jury selection based on the invited error doctrine, or in the alternative, for harmless error that had no substantial and injurious effect on the verdict); *see also United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975) ("A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where, as here, it is not clear that the defendant was prejudiced thereby."). Accordingly, Petitioner fails to show he is entitled to relief on this claim.

Finally, relying on the lower court's reasoning at the sentencing hearing, the Appellate Division found no abuse of discretion in the lower court's imposition of consecutive sentences. *Ulysse*, 2013 WL 1858914, at *5. The sentencing court imposed consecutive sentences in accordance with *State v. Yarbough*, 498 A.2d 1239, 1249 (N.J. 1985). In analyzing the *Yarbough* factors, the sentencing court found that 1) "the crimes and their objectives were not predominately independent of each other [because] both murders occurred in the same manner and in response to

- 11 -

the same conduct," (D.E. No. 10-25 ("Sentencing Tr.") at 24:20–23); 2) the crimes involved independent or separate acts of violence against each of the victims (*id* at 25:9–11); 3) the crimes were committed so close in time and place as to indicate a single period of aberrant behavior (*id.* at 25:11–13); and 4) the crimes committed involved multiple victims (*id.* at 25:15–16).   The sentencing court found that, while some of these factors weighed in favor of imposing concurrent sentences, factor (d)—the multiple victim factor—"strongly support[ed] a finding that the sentences should be consecutive."   (*Id.* at 25:8–11 & 27:1–4).

As a threshold issue, this Court cannot reexamine a state court's determinations on state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Sentencing is generally considered a matter of state criminal procedure and does not fall within the purview of federal habeas review.  *Logmans v. Moore*, No. 02-5622, 2005 WL 1106336, at *19 (D.N.J. Apr. 29, 2005).  "A habeas court will not re-evaluate a sentence unless it exceeds the statutory limits or was arbitrary and capricious as to constitute a due process or Eighth Amendment violation."  *Perez v. D'Ilio*, No. 16-4767, 2019 WL 3943012, at *19 (D.N.J. Aug. 20, 2019).  *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42–43 (3d Cir. 1984).  No such violation exists here.  As the sentencing court correctly stated, "[c]rimes involving multiple deaths or victims who have sustained serious bodily injuries represent especially suitable circumstances for the imposition of consecutive sentences." (Sentencing Tr. at 25:24–26:3 (quoting *State v. Carey*, 775 A.2d 495 (N.J. 2001)).  The Court thus finds no error in the state courts' imposition of consecutive sentences under the governing law, much less an error resulting from an arbitrary and capricious sentencing.  *See Friedman v. Buechele*, No. 14-2638, 2016 WL 2981536, at *4 (D.N.J. May 23, 2016) (collecting cases and holding that the state court's imposition of consecutive sentences was not an unreasonable application of Supreme Court Eighth Amendment precedent).

### C.     The Second and Third PCR Petitions

On December 4, 2013, Petitioner filed his second petition for PCR, alleging claims for relief based on ineffective assistance of counsel, prosecutorial misconduct, "sentencing violation," and "*Miranda* rights issue."  *Ulysse*, Trial Ct. 2015 at 3; (D.E. No. 10-9 at 176).  The trial court denied these claims as time-barred, repetitive, and lacking evidentiary support.  (*Id.* at 181–82).  Petitioner did not appeal the trial court's decision, and instead filed a third petition for PCR, alleging, among others, the following claims, which are the remaining claims before this Court: 1) Petitioner's trial counsel failed to "exercise a peremptory challenge to excuse a juror who worked in law enforcement"; 2) trial counsel failed to request an accomplice liability jury instruction; 3) trial counsel failed to object to the trial court's "over emphasizing the charges on conspiracy to commit murder and conspiracy as a basis for substantive liability on Defendant's guilt"; and 4) the trial court erred in limiting his trial counsel's opportunity to cross-examine a witness.  *See Ulysse*, Trial Ct. 2015 at 4; *Ulysse*, 2015 WL 10401424 at, *1–2; (Pet. at 6–7).  The trial court denied these claims as time-barred and for failure to show good cause pursuant to Rules 3:22-4, 3:22-6(b), and 3:22-12(a) of Rules Governing the Courts of the State of New Jersey.  *Ulysse*, Trial Ct. 2015 at 5–6.  The Appellate Division affirmed the trial court's denial of the third PCR petition "for the reasons stated" by the lower court and concluded that Petitioner's arguments "[were] without sufficient merit to warrant extended discussion."  *Ulysse*, 2015 WL 10401424 at, *2.  Relevant to the instant Petition, the Appellate Division also highlighted that Petitioner's ineffective assistance of counsel claim based on his counsel's failure to raise preemptory challenges to strike law enforcement officers as jurors was not supported by the record and was time-barred.  *Id. at *3.*

The Court agrees that Petitioner's remaining claims were time-barred, and as a result, federal review is inappropriate.  Federal habeas courts generally may not review a state court's

denial of a state prisoner's constitutional claim if "the decision of that court rests on a state law ground that is independent of the federal question." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "A procedural default analysis, then, is two-fold: the federal court must determine if a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its decision on the state procedural rule." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). A state rule is "adequate" for procedural default purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule, and that review is foreclosed by what may honestly be called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant." *Leyva*, 504 F.3d at 366 (quoting *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005)) (internal quotation marks omitted).

Here, the state court procedurally barred claims in Petitioner's third petition for PCR pursuant to New Jersey Rules of Court 3:22-4 and 3:22-12(a).[3] *Ulysse*, Trial Ct. 2015 at 5–6. Under Rule 3:22-4(b), a second or subsequent petition for PCR is barred unless it is filed timely under Rule 3:22-12(a)(2) and alleges one of the three grounds: 1) it relies on a newly recognized constitutional right made retroactive; 2) the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence and the facts, if proven, would raise a reasonable probability that the relief sought would be granted; and 3) the petitioner alleges a *prima facie* case of ineffective assistance of counsel claim. Under Rule 3:22-12(a)(2), the

---

[3]     The court also dismissed the various previously asserted claims under Rule 3:22-5, which provides that "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." *Ulysse*, Trial Ct. 2015 at 6. Because these claims were addressed in prior sections, the Court does not analyze them again under this section.

subsequent petition for PCR must be filed within a year of 1) when the new constitutional right was recognized; 2) when the new factual predicate for the relief sought was discovered, or 3) when the prior petition for PCR was denied, in which the prior ineffective assistance of counsel claim was alleged.

Petitioner's third petition for PCR was filed on November 19, 2014, while his first petition for PCR was denied on November 10, 2008. *Ulysse*, Trial Ct. 2015 at 5. The trial court thus found that the third petition for PCR failed to meet the one-year time limit. *Id.* The court also found that Petitioner's third petition for PCR did not allege newly recognized constitutional rights, newly discovered facts, or a *prima facie* case of ineffective assistance of counsel. *Id.* The Court agrees that Petitioner failed to comply with New Jersey's procedural rules when filing his third petition for PCR.

The Court also finds that Rules 3:22-4 and 3:22-12(a) are "adequate" procedural rules as they are "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *See Szuchon*, 273 F.3d at 327. Petitioner does not argue otherwise. Indeed, New Jersey appellate courts frequently decline to consider claims that were not properly raised in the lower court. *See, e.g.*, *State v. Robinson*, 974 A.2d 1057, 1069 (2009) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available[.]") (quoting *Nieder v. Royal Indem. Ins. Co.*, 300 A.2d 142, 145 (1973)); *see also State v. Coleman*, No. A-2704-14T1, 2016 WL 6937921, at *5 (N.J. Super. Ct. App. Div. Nov. 28, 2016); *State v. Dunlap*, No. A0329-13T1, 2016 WL 207616, at *1 n.3 (N.J. Super. Ct. App. Div. Jan. 19, 2016); *State v. Southerland*, No. A-4663-11T1, 2015 WL 392172, at *7–8 (N.J. Super. Ct. App. Div. Jan. 30, 2015). Moreover, the Appellate Division has consistently upheld procedurally defaulted PCR

denials pursuant to both Rule 3:22-4 and Rule 3:22-12(a).  *See State v. Fleming*, No. A-1432-14T2, 2016 WL 3449249, at *3 (N.J. Super Ct. App. Div. June 24, 2016); *see also State v. Messam*, No. A-0425-13T3, 2015 WL 966027, at *4 (N.J. Super. Ct. App. Div. Mar. 6, 2015).  The Third Circuit has also found New Jersey court rules such as Rule 3:22-12 to be an independent and adequate ground for procedural default.  *Johnson v. Pinchak*, 392 F.3d 551, 562 (3d Cir. 2004) ("From the unambiguous language of Rule 3:22–12 and from the many prior cases that have consistently applied the time bar, it is clear that this procedural rule was an independent and adequate state ground establishing procedural default.").

Finally, the Court is mindful of the following ruling by the United States Supreme Court:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.  Here, Petitioner has not shown cause and prejudice to excuse any of his defaulted claims, nor has he established that failure to consider the alleged constitutional errors will result in a fundamental miscarriage of justice such that, "more likely than not[,] no reasonable juror would have convicted him."  *Werts*, 228 F.3d at 193.  Therefore, this Court will not consider the merits of Petitioner's claims that were already deemed defaulted in the state court.  *See Coleman*, 501 U.S. at 751 (eliminating "inconsistency between the respect federal courts show for state procedural rules and the respect they show for their own" and holding that "[n]o less respect should be given to state rules of procedure.").  Petitioner's habeas petition based on these grounds is thus denied.

- 16 -

**IV.    CERTIFICATE OF APPEALABILITY**

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter.  *See* 3d Cir. L.A.R. 22.1 (2011).  The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For reasons discussed in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

**V.    CONCLUSION**

For the reasons discussed above, Petitioner's habeas petition is DENIED.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**
